some advice on who the warden is. And our final case of the day is Combs v. Kijakazi. Mr. Zender. Good morning. May it please the court. My name is James Zender and I am here today on behalf of Ms. Angel Combs. The central issue in the case today is whether the ALJ's conclusion that the RFC is supported by substantial evidence. If you would use real words we would appreciate it. Fair enough. Thank you. The central issue in the case today is whether the administrative law judge's conclusion that the residual functional capacity applies at all times and it is supported by substantial evidence. The answer to this is no because the administrative law judge fails to create a logical bridge to that conclusion, leaving significant gaps in their reasoning and leaving nothing for a reviewing court to verify. So Mr. Zender, I have a question for you. This comes up actually with some regularity in cases where the disability claimant is represented by counsel. And I understand that Ms. Combs was throughout this process represented. And I also understand that the administrative law judge has certain independent responsibilities to develop the record. But I don't see anywhere that anyone clued the ALJ into the idea that a closed disability period from June 2019 to July 2020 was on the table. And I wonder why wasn't there some need to be more specific about that so that if you needed that precision of explanation, if you needed that logical bridge as everybody likes to call it, the ALJ would know that was there. What we have instead are comments that the ALJ makes that touch on different incidents, different doctors' visits, and some of them are within that alleged closed period and others are outside. But it seems like a tall order to ask the ALJs to cut up every possible time frame and see if maybe this is a closed period or not. Right. And so I'll answer it in pieces. But first off, the court Jackson v. Estru out of the District Court of Illinois, Northern District of Illinois, has specifically addressed the issue of whether the issue has to be exhausted before the Appeals Council or the ALJ on the issue of a closed period. And citing Sims v. Apfel from the Supreme Court, they determined that they did not need to exhaust that issue or raise that issue at the Appeals Council. Right. It's really more raising it. It's calling to the adjudicator's attention. An important theory. I mean, sometimes people say they're disabled forever, and some of them are, and sometimes there are closed periods. The statute recognizes both. But when we're here on appeal from a district court, from the Appeals Council, from all the way back, and we're being asked to say that somebody's made a serious error, a reversible error, it strikes me as somewhat troublesome from a procedural point of view to fault them for something that they didn't know was on the table. So I'll answer it in this way. So at a certain point, the record that is being developed by the ALJ in unison with the claimant is going to have certain facts that should trigger that analysis by the ALJ. And specifically here, you see a concentration of a lot of her issues during those 14 months that we highlight in our brief. Do you see also, you know, some event in July 2020 that suddenly makes her better? So the key piece there is the ALJ identifies that something changed in their decision when they note that they likely improved because in September of 2020, they had not taken their gabapentin, which is back pain medication, for at least a month. They also note that at that time, they were not taking their headache abortive for several months, and that was noted in October of 2020. And so you walk those back, and they all seem to kind of coalesce at that same time. But there was no, you know, operation or spinal fusion or anything tangible. It's inferences drawn from the medical record. Yes, but there was also the second radiofrequency ablation that occurred in July. The last of the six spinal procedures she had done was done in July of 2020. And so, again, work— I have a slightly different version on why you think the ALJ should have figured this out independently. In the district court, you argued for a closed period of February 2018 through June 2020. Now here, you're arguing for June 2019 through July 2020. Correct. Why would the ALJ have seized one or the other of those or any different period? So I think we— When the lawyer himself can't agree on what the right period is. The period of June to July is the most heightened and concentrated period of the facts. Well, that might be. But if you're an administrative law judge, or for that matter, if you're a district judge, and you picked up the record in this case, would June 2019 through July 2020 just have snapped off the page like that at you? Because it didn't for your own presentation in the district court, which argued for a different period. What was it that would have gotten the ALJ to say, ah, I need to focus on those 14 months? The ALJ made a specific finding of likely improvement in her condition and inferred negatively from that that they had more functionality. That should have triggered them because something changed, and what counsel is unable to identify that because the ALJ never identifies it in their opinion. But at that point in time, the ALJ should have looked back and said, okay, something changed. They need to identify it. So why didn't you make an argument in the district court for June 2019 through July 2020? The end date remains the same at both the district court. No, one is June and one is July. That's the start date, Your Honor. No, the start date, one is February and one is – look, if you're an administrative law judge, or for that matter, a district judge, and there's a four- or five-year period, that's about 60 start months and 60 end months, and the number of combinations, I think, is 60 factorial, which is probably greater than the number of atoms in the universe. It's the kind of thing for which you really need legal help. And the fact that Combs herself, the lawyers for Combs, have named different periods in different tribunals doesn't suggest that there is something that just ought to be apparent to any reasonable finder of fact. I think that the ALJ finding an improvement occurred should have triggered them to perform an analysis and look backwards from that point and say, is there anything that stands out that this could be a potential closed period? But they never did that, and that, I think, is the major issue. And whether we define that period as February of 2018 or June of 2019 as the starting point is somewhat irrelevant because the point is that the ALJ made this finding, and they should have looked backwards from there and determined whether something stuck out as a potential closed period. They did not do that in this case, and so that is why we highlight the 14 months. Obviously, at the district court, we highlight a different amount, but the crux of the issue remains the same, which is the ALJ should have done more than rely on just a boilerplate statement that it applied at all times because they found something changed. And then looking back, there are six procedures that occurred before that change. There were a number of other things that were happening as far as her mental health appointments and other pain management meetings and a heightening in concentration of her impairments. And the ALJ should have addressed that, should have acknowledged that, but instead gave a boilerplate statement that it applied at all times, never resolving the issue they created by asking or identifying an improvement. If there's no more questions, I will reserve the rest of my time for rebuttal. Thank you. Certainly, counsel. Mr. Alicia. May it please the Court, Brian Alicia on behalf of the Acting Commissioner of Social Security. In this case, the ALJ supported her decision with substantial evidence. She looked at, she explained how the evidence throughout the period that Ms. Combs claims was a possible closed period of disability supported her decision. From June 2019 onward through December 2020, which was Ms. Combs' date last insured, the ALJ recounted in some detail examination findings that were largely normal on a regular basis. So is this one of these things, the ALJ never does pinpoint a moment during that time, let's just say June 2019 to December 2020, which is for a third time period. The ALJ never pinpoints a time in which the ALJ is convinced that she is disabled. Is that a fair statement? That she keeps getting these relatively normal medical findings, range of motion, ability to sit, stand, et cetera, or at least there's evidence that the ALJ credits. So if you're looking for a closed period of disability, don't you need to at least start with some time when the ALJ says, boy, but for a few months she really was out of commission, a couple of months after an operation or a couple of months after hospitalization. But we don't have any time that this ALJ thinks she is not functional. Is that right? That's right, Your Honor. We don't have any significant surgery or anything of that nature. And in fact, the ALJ cites improvement in late June 2019 where Ms. Cohn's exams, where she at first had a positive straight leg raising test and an intalgic gait, those both improved by June 2019. So why did nobody ever follow through? I mean, we have this weird thing in this record that several doctors recommended the use of narcotics, but they never apparently wrote a prescription for it, for narcotic medications? There is a notation that appears to be almost, I hate to use the word boilerplate, but it appears over and over again and there's not any real explanation for it. I mean, you would think if a doctor was going all the way out to the narcotics level, the doctor would be convinced the person was experiencing very significant pain. Well, there is a notation back in March 2018 that, and actually the ALJ noted this too, that the doctor encouraged Ms. Cohn's to avoid taking narcotic pain medication. But I thought there was a different point at which it's recommended. There are notations that indicate that... There are two occasions on which the attending physician recommends that she undergo, that she use narcotic medications for her pain. Yeah, if she experienced... But the person doesn't prescribe them, just says, hey, you should go, I mean, I don't know whether they think she should go buy them in the bazaar, you know, but I don't... It's a little strange to me to see a doctor recommending something that the doctor doesn't then follow up with a written prescription. It appears to be almost like a boilerplate notation and, in fact, like the doctors continually prescribe gabapentin, which is a nerve pain medication, and diclofenac, which is a non-steroid anti-inflammatory, and those medications stay consistently at the same dosage throughout the relevant period. So it's not clear why there was that notation, but it is clear from the record that narcotic pain medications were never actually prescribed. Right. And the other thing that always bothers me about this, the doctors are also noting that she's doing household chores, vacuuming, sweeping floors, you know, and then sit down and take a 30-minute nap, which would not be indicative of the ability to conduct daily work at most workplaces that I can think of. Maybe you have a Roomba. You know, you have different ways of vacuuming, and these household chore things usually are not particularly helpful if the question on the table is, can somebody work eight hours a day, five days a week? There are notations of that where basically Ms. Combs is reporting her report of symptoms and what she's been doing on a daily basis and what she's able to do. And so if she says, I can vacuum, I'm not sure where the inference is, oh, that means you can hold down a full-time job. I don't think the ALJ has made that inference or the doctors did. The doctors repeatedly noted normal examinations and actually improvement. Ms. Combs reported improvement with medication very early on in what is an alleged closed period of disability. In June 2019, she's saying basically that gabapentin and diclofenac are working and helpful.  I mean, she'll get like a boost and then it goes away again. Well, but the doctors are keeping her at the same medications and at the same dosage throughout the period, and that's what we have to go on here, and that's what the administrative law judge had to go on here. As far as this August 22nd, or excuse me, September 22nd notation, that was simply the ALJ simply stated that Ms. Combs had not taken her gabapentin for a month, which could likely indicate improvement in her symptoms. However, the doctor restarted her on gabapentin. It's simply a notation the ALJ made. The ALJ also, again, noted largely normal examination findings, and, in fact, the ALJ went year by year through the medical record and, you know, repeatedly noted the normal examination findings and other evidence to support the residual functional capacity she assessed. Now, when counsel is saying that the ALJ should have looked at this particular comment that the ALJ made and gone back from there, it's not even clear how far back counsel would want the ALJ to go because as... Well, there must have been an alleged onset date. There was a December 2015 alleged onset date. Yeah, so that answers that. However, but it is Ms. Combs' burden to establish the closed period of disability that she's referring to. So if she's saying that the ALJ was obligated to look back, what's the beginning date for that, for the ALJ to look back for this alleged closed period of disability? As Judge Easterbrook indicated, before the district court it was February 2018, and now before this court it's June 2019. And so it's not clear what Ms. Combs would want the ALJ to do here, and the ALJ did look year by year through the medical evidence and other evidence in this case. And she repeatedly, she was not selective in reciting the evidence or analyzing the evidence, and she noted improvement where it was noted and the same medications throughout. And it's important to note that it was Ms. Combs' burden to establish a closed period of disability, and she has not carried this burden. And we would argue that this case is analogous to cases such as Summers, Reed, and Kuhn, where Ms. Combs' counsel, who's the same counsel here, had also argued for a closed period of disability, and we believe that the courts in those cases correctly found that the plaintiff had not established a closed period of disability. How often does that actually come up in cases that you're familiar with? A closed period as opposed to an open period? I just wonder, is it like every other case? I mean, in my experience it's not common. It's not common, Your Honor. And most of the time it would be something where the administrative law judge would make, like, a statutory finding of medical improvement, which requires a whole different set of criteria, and that's not an issue here. The issue here is that basically the period the ALJ considered, there were largely normal examinations, and the ALJ went year by year through that evidence. And so we would argue that this court should look to the cases of Summers, Reed, and Kuhn, and we would respectfully request that the court affirm the ALJ's decision. Thank you. Thank you, counsel. Anything further, Mr. Zender? Thank you. Just quickly, one of the things brought up by the appellees was the consistency through the record of a lot of these sort of medications, straight leg raises, or other findings by the doctors. But that actually highlights the exact issue we're here talking about, which is the conflict the ALJ creates when they find improvement. If everything was consistent and everything was kosher and no changes, then why did they specifically find that there was going to be an improvement at the end of this period some point in time around July of 2020? So that really just highlights the conflict that goes unresolved by the ALJ and is why remand is necessary in order for the ALJ to provide the proper analysis. Thank you. Thank you very much. The case is taken under advisement, and the court will be in recess.